**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x

DANIEL LILIENTHAL,

Plaintiff,

-against-

PRESIDENT AND FELLOWS OF HARVARD COLLEGE,

Defendant.

---------------------------------------------------------------------x

Case No.: 1:26-cv-08959

**VERIFIED COMPLAINT**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Plaintiff DANIEL LILIENTHAL ("Plaintiff") by his attorneys White, Rose & Hilferty, P.C., as and for his Verified Complaint, hereby alleges the following:

## NATURE OF THE CASE

1. Plaintiff brings this action alleging that PRESIDENT AND FELLOWS OF HARVARD COLLEGE ("Defendant") discriminated against him based upon his religion and retaliated against him following his engagement in protected activity in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C § 2000 *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. § 296, *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y. Admin Code § 8-107, *et seq*.

2. Plaintiff seeks damages to redress his financial and emotional damages that Defendant's unlawful discriminatory and retaliatory practices in violation of federal, state, and local statutes inflicted upon him.

## JURISDICTION & VENUE

3. Jurisdiction of this Court is proper under 42 U.S.C. § 2000, *et seq.*, and 28 U.S.C. §§ 1331 and 1343.

4. The Court has supplemental jurisdiction over Plaintiff's claims brought under state law pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## PROCEDURAL REQUIREMENTS

6. On July 17, 2025, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

7. Plaintiff's formal Charge of Discrimination filed with the EEOC asserted the same factual allegations that are asserted in this Verified Complaint.

8. On July 14, 2026, Plaintiff received a Notice of Suit Rights dated [date], from the EEOC.

9. Plaintiff timely and properly commenced this action within 90 days of receipt of the Notice of Suit Rights after exhausting all administrative remedies with the EEOC.

## PARTIES

10. At all relevant times, Plaintiff DANIEL LILIENTHAL was an individual residing in the State of New York, County of New York. Plaintiff was employed by Defendant and worked remotely from his home in New York, New York.

11. Defendant PRESIDENT AND FELLOWS OF HARVARD COLLEGE, with an address at 1033 Massachusetts Avenue, 5th Floor, Cambridge, MA 02138, is a not-for-profit corporation registered to do business in the State of New York and the governing board of Harvard University with oversight responsibility and fiduciary duties for the University's affairs. Defendant was Plaintiff's employer. At all relevant times, Plaintiff worked for Defendant within New York County, New York.

## RELEVANT FACTS

12. Plaintiff is and was throughout the time period described herein a Jewish male, who practiced and observed the Jewish faith.

13. Plaintiff successfully worked for Defendant for eight (8) years, from 2015 through 2023. In 2023, Plaintiff resigned to pursue another role outside of Defendant's organization.

14. In June of 2024, Plaintiff learned of the opening for an Associate Director of Finance and Grants Administration at the Harvard T.H. Chan School of Public Health in the Center for Biostatistics in Aids Research ("CBAR"). The role was advertised as fully remote and would involve supervising a team of six (6) individuals.

15. Plaintiff submitted an application for the role on June 26, 2024 and was contacted for an interview just two days later, on June 28, 2024.

16. On July 1, 2024, Plaintiff commenced an intense interview process that entailed interviews with nine (9) different people, including multiple calls with Executive Director for Finance, Administration & IT Jackie Blake.

17. Ms. Blake later became Plaintiff's direct supervisor.

18. Defendant issued a formal offer letter to Plaintiff on August 2, 2024 following weeks of salary and benefits negotiations.

19. Plaintiff accepted Defendant's offer of employment on August 5, 2024.

20. Throughout the application process, Plaintiff did not disclose or discuss his religion with any of Defendant's employees.

21. On September 23, 2024, Plaintiff started in his role as Associate Director of Finance and Grants Administration at the Harvard T.H. Chan School of Public Health in CBAR.

22. On his first day, Plaintiff received an orientation timeline that included a list of one-on-one meetings for his first thirty (30) days. He also received a welcome packet describing various human resources tasks he would need to do during his first thirty (30) days, including items like signing up for health benefits, registering for new employee orientations, and accessing payroll systems. Plaintiff's sole call scheduled for his first day was with his mentor, Chenille Hogan, Assistant Director of Administration.

23. On September 24, 2024, Ms. Hogan sent Plaintiff an email listing various administrative tasks for Plaintiff to focus on during his first few days. These included watching videos about health benefits, signing up for University orientations, and getting access to CBAR's internal website.

24. Also on September 24, 2024, Plaintiff had his first one-on-one call with his supervisor, Ms. Blake. This call was spent troubleshooting technical issues, as Plaintiff had not received a Defendant-issued laptop in advance of his start date. They also reviewed two (2) trainings Plaintiff was to complete in his first two (2) weeks of work. These included how to access the department's document system, called "ENSUR trainings," and clinical trials and human subjects training, called "CITI trainings." Ms. Blake expressed that she would be busy with

financial reports over the following two (2) weeks and would be mostly “hands-off” with Plaintiff’s onboarding. Ms. Blake set the expectation that Plaintiff would work on completing the two (2) initial trainings, get access and begin reviewing CBAR’s files, and to begin getting to know his team through the pre-scheduled meetings. Plaintiff was not provided with a comprehensive list of trainings related to the technical aspects of the role, nor was he provided a comprehensive document with due dates for trainings. Ms. Blake did not share any expectations or trainings related to management. Ms. Blake did not provide a 30-60-90 day plan for Plaintiff and did not review longer term goals or work expectations with Plaintiff.

25. On September 25, 2024, Plaintiff received his work laptop and spent much of that and the following days working with Defendant’s IT department to set up his laptop, install necessary software, and begin the internal training he had been assigned.

26. During his first week with Defendant, Plaintiff held one-on-one meetings with each of his six (6) direct reports.

27. In or around this time, Plaintiff advised Ms. Blake that he would need to take paid time off on October 3 and 4, 2024 to observe the Jewish holiday of Rosh Hashanah. Ms. Blake approved this time off request.

28. On October 1, 2024, Plaintiff participated in an all-staff meeting with the full CBAR department.

29. On October 1 and 2, 2024, Plaintiff again met with his six (6) direct reports individually. At the end of each meeting, he advised them that he would be out of the office the following two (2) days for the Jewish holiday of Rosh Hashanah.

30. On October 2, 2024, Plaintiff had a call with Ms. Blake. The call was focused on orienting Plaintiff to Defendant’s file systems for financial and grant documents, to which he had

only received access two (2) days prior. On this call, Ms. Blake indicated that Plaintiff should prioritize a training for a department financial platform called Wasabi the following week. Plaintiff agreed to do so.

31. At no point did Ms. Blake provide any negative performance feedback, concerns about Plaintiff's performance, or due dates for additional training. Further, Ms. Blake did not provide instructions related to department procedures for communicating time off, such as by using department-wide emails or away messages. Nevertheless, Plaintiff communicated his time off on October 3 and 4, 2024 to Ms. Blake and each of his direct reports. Following this call, Ms. Blake forwarded Plaintiff approximately seven (7) emails regarding additional trainings that had been held up, per Ms. Blake, by technical issues. No due dates or other instructions related to time sensitivity or urgency were provided to Plaintiff.

32. During this call, Plaintiff advised Ms. Blake that before the end of the day, he will have spoken with each of his direct reports to remind them that he would be out of office the following two (2) days to observe the Jewish holiday of Rosh Hashanah.

33. On October 3 and 4, 2024, Plaintiff took paid time off to observe the Jewish holiday of Rosh Hashanah. Plaintiff's taking time off to observe a religious holiday is a religious accommodation.

34. Plaintiff later learned that on October 3, 2024, the first day Plaintiff was out for the Jewish holiday, Ms. Blake contacted Elissa Brennan, Director of Human Resources and Talent Acquisition, to share "concerns" about Plaintiff's performance. It is not clear what purported concerns Ms. Blake shared as she had not provided any negative feedback to Plaintiff, who had only been employed by Defendant for eight (8) business days. Upon information and belief, Ms.

Blake's meeting with Ms. Brennan was an effort to begin laying the groundwork to find a justification to terminate Plaintiff just two (2) weeks later.

35. Upon his return to work following Rosh Hashanah, on October 7, 2024, Plaintiff received an unusually formal email from Ms. Blake requesting a list of all trainings Plaintiff completed since his start date. When Plaintiff shared this list, Ms. Blake then asked for a list of trainings Plaintiff had not yet completed.

36. Upon information and belief, these requests were an effort to manufacture the appearance of legitimacy for Ms. Blake's plan to terminate Plaintiff due to his religion.

37. Also on October 7, 2024, Plaintiff had a Zoom conference with Ms. Blake that was scheduled as a routine onboarding call. Ms. Blake began the call by stating "I have some serious concerns about you and your work here so far" before admonishing Plaintiff's "productivity," "management style," and "taking time off" – none of which had been raised by Ms. Blake prior to Plaintiff's observance of the Jewish holiday of Rosh Hashanah. Specifically, Ms. Blake discriminatorily stated "I don't want you thinking you can just take off time whenever you want." Ms. Blake also raised trainings Plaintiff had not finished, specifically referencing trainings she had shared with Plaintiff just hours before his being out for the Jewish holiday. Ms. Blake sent these trainings to Plaintiff with no due date and later acknowledged that they were not urgent.

38. On October 8, 2024, Plaintiff shared a proposed 30-60-90 day plan with Ms. Blake, which outlined expectations for Plaintiff's role. Ms. Blake verbally agreed with the timelines and performance expectations set forth therein.

39. From October 9 through 11, 2024, Plaintiff conducted positive one-on-one calls with each of his direct reports, conducted technical meetings with faculty, and completed his

assigned trainings for the week. He informed Ms. Blake of this progress. Ms. Blake did not share any negative feedback or concerns about Plaintiff's performance or progression.

40. On October 16, 2024, Defendant abruptly terminated Plaintiff's employment via a Zoom call wherein Ms. Blake told Plaintiff that he was not a "fit" for the role. Plaintiff asked if he was being terminated for performance, to which Ms. Blake responded "no." Plaintiff asked if he had done something wrong, to which Ms. Blake responded "no." Plaintiff asked if he could have done something differently to prevent this, to which Ms. Blake responded "no."

41. Upon information and belief, Defendant's manager, Ms. Blake, harbors discriminatory animus towards Plaintiff due to his being Jewish.

42. Defendant terminated Plaintiff's employment because he is Jewish and because he took time off to observe the Jewish holiday as a religious accommodation.

43. On October 17, 2024, Plaintiff had a phone call with Ms. Brennan, who indicated that he was terminated for performance issues. This contradicted Ms. Blake's purported reason for terminating Plaintiff the day prior. Later that day, Plaintiff received a termination letter, drafted by Ms. Blake, indicating that he was terminated for the pretextual reason that he lacked the "skills or aptitudes" to do the job. Plaintiff was terminated on the fifteenth business day of his tenure. During this call, Plaintiff told Ms. Brennan that he believed his termination was a result of antisemitism and that he wished to escalate the matter further.

44. Plaintiff escalated this matter to CBAR's leadership team and to Defendant's ombuds office to no avail. Plaintiff also indicated that he wished to appeal his termination due to discrimination pursuant to Defendant's policies and file a complaint of discrimination pursuant to Defendant's policies. Defendant refused to permit Plaintiff to do either, in direct contravention of their own enumerated policies, under the guise that he was a former employee.

45. Defendant's history of antisemitism is well known and well documented. Since the beginning of 2024, Defendant has faced multiple lawsuits alleging antisemitism and is currently embroiled in a very public battle with the federal government concerning Defendant's failure to protect Jewish students.

46. Based upon the foregoing, Defendant subjected Plaintiff to unlawful discrimination based upon his religion and retaliated against him following his engagement in the protected activity of taking time off for religious observance as a religious accommodation.

47. As a direct result of their discrimination and retaliation, Plaintiff has suffered severe emotional distress, has lost income, benefits, and other pecuniary losses associated with losing his job.

48. Further, this discriminatory and retaliatory action has damaged Plaintiff's career and reputation.

49. Defendant's actions were willful and intentional as evidenced by their history of discrimination and retaliation towards Jewish employees and students.

## AS AND FOR A FIRST CAUSE OF ACTION
## DISCRIMINATION IN VIOLATION OF 42 USC § 2000e-2
## (Title VII Religious Discrimination)

50. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

51. Defendant's discrimination against Plaintiff concerned one of the activities protected by Title VII of the Civil Rights Act of 1964, 42 USC § 2000e-2.

52. Title VII of the Civil Rights Act of 1964 states: "It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise

to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 USC § 2000e-2.

53. Plaintiff is a member of a protected class pursuant to Title VII of the Civil Rights Act of 1964, Section 2000e-2—namely, Plaintiff is Jewish.

54. Plaintiff possessed proper qualifications for Defendant to continue his employment as evidenced by Defendant's hiring of Plaintiff following a rigorous interview process.

55. Defendant and/or its agents engaged in an unlawful practice by discriminating against Plaintiff because of his religion. Defendant and/or its agents intended to discriminate against Plaintiff on the basis of his religion by subjecting him to disparate treatment in the terms and conditions of their employment, as compared to similarly situated non-Jewish employees. Specifically, Defendant subjected Plaintiff to disparate treatment by subjecting him to heightened scrutiny following his disclosure of his religion and ultimately terminating his employment.

56. As a direct and proximate result of Defendant's unlawful conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000e-2, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, warranting an award of monetary damages and other relief.

57. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000e-2, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, warranting an award of monetary damages and other relief.

**AS AND FOR A SECOND CAUSE OF ACTION**
**DISCRIMINATION IN VIOLATION OF N.Y. EXEC. LAW § 296**
**(NYSHRL Religious Discrimination)**

58. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

59. The New York State Human Rights Law, N.Y. Exec. Law § 296 provides, in pertinent part: "It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

60. Plaintiff is a member of a protected class pursuant to New York Executive Law § 296—namely, Plaintiff is Jewish.

61. Defendant and/or its agents engaged in an unlawful practice by discriminating against Plaintiff because of his religion. Defendant and/or its agents intended to discriminate against Plaintiff on the basis of his religion by subjecting him to disparate treatment in the terms and conditions of their employment, as compared to similarly situated non-Jewish employees. Specifically, Defendant subjected Plaintiff to disparate treatment by subjecting him to heightened scrutiny following his disclosure of his religion and ultimately terminating his employment.

62. As a direct and proximate result of Defendant's unlawful conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, warranting an award of monetary damages and other relief.

63. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, warranting an award of monetary damages and other relief.

**AS AND FOR A THIRD CAUSE OF ACTION**
**DISCRIMINATION IN VIOLATION OF N.Y. ADMIN CODE § 8-107**
**(NYCHRL Religious Discrimination)**

64. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

65. The New York City Human Rights Law, N.Y. Admin Code § 8-107 provides, in pertinent part: "It shall be an unlawful discriminatory practice: (a) For an employer or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual orientation, uniformed service or alienage or citizenship status of any person: (i) To represent that any employment or position is not available when in fact it is available; (ii) To refuse to hire or employ or to bar or to discharge from employment such person; or (iii) To discriminate against such person in compensation or in terms, conditions, or privileges of employment."

66. Plaintiff is a member of a protected class pursuant to New York City Human Rights Law, N.Y. Admin. Code § 8-107, namely, Plaintiff is Jewish.

67. Defendant and/or its agents intended to discriminate against Plaintiff on the basis of his religion.

68. Defendant's discrimination against Plaintiff concerned activities protected by N.Y. Admin. Code § 8-107.

69. Plaintiff possessed proper qualifications for Defendant to continue his employment as evidenced by Defendant's hiring of Plaintiff following a rigorous interview process.

70. Defendant and/or its agents engaged in an unlawful practice by discriminating against Plaintiff because of his religion. Defendant and/or its agents intended to discriminate against Plaintiff on the basis of his religion by subjecting him to disparate treatment in the terms and conditions of their employment, as compared to similarly situated non-Jewish employees. Specifically, Defendant subjected Plaintiff to disparate treatment by subjecting him to heightened scrutiny following his disclosure of his religion and ultimately terminating his employment.

71. As a direct and proximate result of Defendant's unlawful conduct in violation of N.Y. Admin Code § 8-107, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, warranting an award of monetary damages and other relief.

72. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of N.Y. Admin Code § 8-107, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, warranting an award of monetary damages and other relief.

**<u>AS AND FOR A FOURTH CAUSE OF ACTION</u>**
**RETALIATION IN VIOLATION OF 42 U.S.C. § 2000e**
**(<u>Title VII Retaliation</u>)**

73. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

74. Title VII of the Civil Rights Act of 1964 prohibits discrimination and retaliation.

75. Title VII of the Civil Rights Act of 1964 provides, in pertinent part: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees…because he has opposed any practice made an unlawful employment practice..." 42 USC § 2000e-3

76. Defendant's employment practices as alleged at length herein constitute an impermissible act of retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

77. The stated reasons for Defendant's conduct were not the true reasons but served as a pretext to conceal Defendant's retaliatory animus against Plaintiff.

78. Plaintiff engaged in protected activity by taking paid time off on October 3 and 4, 2024 to observe the Jewish holiday of Rosh Hashanah as a religious accommodation.

79. Defendant was aware of Plaintiff's engagements in protected activity as Plaintiff's time off was approved by Ms. Blake and Plaintiff informed Ms. Blake and his colleagues that his time off was for the purpose of religious observation.

80. As fully demonstrated within this Complaint, Defendant engaged in a course of retaliatory and adverse conduct against Plaintiff by subjecting Plaintiff to heightened scrutiny following his engagement in protected activity and ultimately terminating his employment.

81. Defendant took these adverse actions shortly after Plaintiff's engagement in protected activity.

82. As a direct and proximate result of Defendant's unlawful conduct in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, warranting an award of monetary damages and other relief.

83. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, warranting an award of monetary damages and other relief.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**RETALIATION IN VIOLATION OF N.Y. EXEC. LAW § 296**
**(NYSHRL Retaliation)**

84. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

85. New York Executive Law § 296(7) prohibits discrimination and retaliation.

86. The New York State Human Rights Law, N.Y. Exec. Law § 296(7) provides, in pertinent part that, "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."

87. Defendants' employment practices as alleged at length herein constitute impermissible acts of retaliation in violation of New York Executive Law § 296(7). The stated reasons for Defendants' conduct were not the true reasons but served as a pretext to conceal Defendants' retaliatory animus against Plaintiff.

88. Plaintiff engaged in protected activity by taking paid time off on October 3 and 4, 2024 to observe the Jewish holiday of Rosh Hashanah as a religious accommodation.

89. Defendant was aware of Plaintiff's engagements in protected activity as Plaintiff's time off was approved by Ms. Blake and Plaintiff informed Ms. Blake and his colleagues that his time off was for the purpose of religious observation.

90. As fully demonstrated within this Complaint, Defendant engaged in a course of retaliatory and adverse conduct against Plaintiff by subjecting Plaintiff to heightened scrutiny following his engagement in protected activity and ultimately terminating his employment.

91. Defendant took these adverse actions shortly after Plaintiff's engagement in protected activity.

92. As a direct and proximate result of Defendant's unlawful conduct in violation of New York Executive Law § 296, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, warranting an award of monetary damages and other relief.

93. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of New York Executive Law § 296, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, warranting an award of monetary damages and other relief.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**RETALIATION IN VIOLATION OF N.Y. ADMIN. CODE § 8-107**
**(NYCHRL Retaliation)**

94. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

95. The New York City Human Rights Law, N.Y. Admin. Code § 8-107 prohibits discrimination and retaliation.

96. The New York City Human Rights Law, N.Y. Admin. Code § 8-107(7) provides in pertinent part that, "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter . . . The retaliation or discrimination complained of under this subdivision need not result in an ultimate action with respect to employment… in a materially adverse change in the terms and conditions of employment…provided, however, that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity."

97. Defendants' employment practices as alleged at length herein constitute impermissible acts of retaliation in violation of N.Y. Admin. Code § 8-107(7). The stated reasons for Defendants' conduct were not the true reasons but served as a pretext to conceal Defendants' retaliatory animus against Plaintiff.

98. Plaintiff engaged in protected activity by taking paid time off on October 3 and 4, 2024 to observe the Jewish holiday of Rosh Hashanah as a religious accommodation.

99. Defendant was aware of Plaintiff's engagements in protected activity as Plaintiff's time off was approved by Ms. Blake and Plaintiff informed Ms. Blake and his colleagues that his time off was for the purpose of religious observation.

100. As fully demonstrated within this Complaint, Defendant engaged in a course of retaliatory and adverse conduct against Plaintiff by subjecting Plaintiff to heightened scrutiny following his engagement in protected activity and ultimately terminating his employment.

101. Defendant took these adverse actions shortly after Plaintiff's engagement in protected activity.

102. As a direct and proximate result of Defendant's unlawful conduct in violation of N.Y. Admin. Code § 8-107, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, warranting an award of monetary damages and other relief.

103. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of N.Y. Admin. Code § 8-107, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, warranting an award of monetary damages and other relief.

**WHEREFORE PLAINTIFF** demands judgment as follows:

a) A declaratory judgment that actions, conduct, and practices of Defendant complained of herein violate the laws of the United States;

b) An injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

c) An award of damages in the amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic harm;

d) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory harm, including but not limited to, compensation for mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

e) An award of damages for any and all other monetary/non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

f) An award of punitive damages in an amount to be determined at trial;

g) Attorney's fees and the costs and disbursements of this action; and

h) Such other and further relief as this Court may deem just, proper, and equitable.

Dated: New York, New York
October 9, 2026

**WHITE & HILFERTY**

Michael P Hilferty

**Michael P. Hilferty**
*Attorneys for Plaintiff*
757 Third Avenue, 20th Floor
New York, New York 10017
917 633 5760
MPH@NYCJobAttorney.com

**VERIFICATION**

State of New York
ss.:
County of

DANIEL LILIENTHAL, being duly sworn, deposes and says: that they are the complainant herein; that they have read the foregoing complaint and knows the content thereof; that the same is true of his own knowledge except as to the matters therein stated on information and belief; and that as to those matters, they believe the same to be true.

DANIEL LILIENTHAL

Sworn to before me this
5th Day of October 2026

Notary Public

BETH A MANUEL
NOTARY PUBLIC, STATE OF MI
COUNTY OF WASHTENAW
MY COMMISSION EXPIRES Jul 27, 2029
ACTING IN COUNTY OF Washtenaw